## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| CUBIC ENERGY, INC., et al., | : | Case No.: 15-12500 (CSS) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| _____ | : | |
| CALVIN A. WALLEN, III AND FOSSIL | : | |
| OPERATING, INC., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Adv. Proc. No.: 18-50698 (CSS) |
| | : | |
| TAUREN EXPLORATION, INC.  and | : | Adv. Docket No.: 12 |
| TAUREN EXPLORATION, INC. | : | |
| LIQUIDATING TRUST, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

### OPINION[1]

**BAYARD, P.A.**
Neil B. Glassman
Scott D. Cousins
Justin R. Alberto
600 North King Street
Suite 400
Wilmington, DE  19801

-and-

**HOLLAND & KNIGHT LLP**
Robert W. Jones
Brent R. McIlwain

**RICHARDS, LAYTON &
FINGER, P.A.**
Marcos A. Ramos
Brendan J. Schlauch
One Rodney Square
920 North King Street
Wilmington, DE  19801

-and-

**WIENER, WEISS & MADISON, A P.C.**
R. Joseph Naus
Seth M. Meyers

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12…" Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Brian Smith
200 Crescent Court, Suite 1600
Dallas TX  75201

Counsel for Debtors and
Debtors-in-Possession

FOX ROTHSCHILD LLP
Thomas M. Horan
919 N. Market Street, Suite 300
Wilmington, DE 19899

Allen J. Guon
321 N. Clark Street, Suite 800
Chicago, IL  60654
          -and-
DENTONS US LLP
Barry Cannaday
2000 McKinney Avenue
Suite 1900
Dallas, TX  75201-1855

Counsel for Plaintiffs

Reid A. Jones
333 Texas Street, Suite 1000
Shreveport, Louisiana 71101

Counsel to the Defendants

Dated: July 2, 2019

Sontchi, C.J. _____

## INTRODUCTION

The oil and gas industry has long been a magnet for adventurers and businesses hoping to ride the wave of an oil boom. Sadly for some, their aspirations did not pan out and their ventures succumbed to the industry's boom-or-bust cycle. Before the Court is a motion related to successive bankruptcies stemming from such events.

A reorganized debtor's purported representative and former CEO are suing the liquidating trust of debtor's erstwhile equity holder and business partner. They allege

2

that a release in the debtor's plan of reorganization bars the claims that the liquidating trust is pursuing against them in the Northern District of Texas. The liquidating trust asserts that the matter is not ripe and moves to dismiss on Rule 12(b)(1) and Rule 12(b)(6) grounds. It writes that the matter is not ripe because the complaint is asking for an advisory opinion and further insists that a final order is required before any court can rule on the complaint. In the alternative, the trust also moves for permissive abstention and venue transfer to the Northern District of Texas.

Typically, ripeness is a question of justiciability and appropriate for resolution under 12(b)(1). But when it is intertwined with substantive issues, 12(b)(6) applies. Because here the question of whether a final order's absence precludes ripeness is entangled with the issue of whether a final order is necessary, the Court proceeds with 12(b)(6). It finds that the complaint has put forth a plausible case for relief. To the extent that ripeness arguments may stand separately, the Court holds that the complaint satisfies this Circuit's ripeness test. Moreover, the Court finds that the interests of justice do not counsel it to abstain from or transfer a matter about the interpretation of its own plan. It accordingly denies the motion in its entirety.

## JURISDICTION & VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)

## PROCEDURAL BACKGROUND

Before the Court is a motion ("Motion") to dismiss, abstain, or transfer the venue of a complaint affecting two bankruptcies, one in Texas and one in Delaware.

On December 11, 2015, Cubic Energy, Inc. ("Cubic Energy") filed for Chapter 11 in this Court. On February 17, 2016, this Court issued an order approving debtor Cubic Energy's third amended plan of reorganization ("Cubic Order" and "Cubic Plan" or "Plan").[2] To facilitate the restructuring, the Plan included a release ("Release") and injunctions barring releasing parties ("Releasing Parties") from suing other parties ("Released Parties").[3] This Release did not apply to claims related to fraud, gross negligence, or willful misconduct.[4] Soon thereafter, Tauren Exploration, Inc. ("Tauren"), Cubic Energy's prepetition equity holder, filed a voluntary Chapter 11 on June 3, 2016 for which a plan was confirmed March 24, 2017.[5] Tauren was controlled by Calvin A. Wallen, III ("Wallen"), who also owned Fossil Operating, Inc. ("Fossil"). In May 2017, Wallen and Fossil moved for this Court to interpret the Release to bar Tauren's trustee from filing certain suits against them ("Enforcement Motion")[6]. The Court denied the Enforcement Motion, explaining that no litigation was ongoing and interpreting the Release would

---

[2] Del. Bankr. 15-12500 D.I. 184 and D.I. 184-1.

[3] Del. Bankr. D.I. 184-1, §§ 11.4-11.5. The Plan includes other released not at issue or discussed here.

[4] *Id.*

[5] Del. Bankr. 15-12500 Adv. Pro. 18-50698 D.I. 1, ¶ 3. (Unless otherwise indicated, all D.I.'s refer to this adversary proceeding.) *See also* Del. Bankr. 15-12500 D.I. 292-2.

[6] Del. Bankr. 15-12500 D.I. 292-2.

constitute an impermissible advisory opinion. Ruling on the Enforcement Motion would not invalidate a clause, order a party to do something, or otherwise resolve the parties' litigation. [7] Since that motion, crucial events involving Wallen and Fossil have occurred. A Tauren representative initiated adversary proceedings against Wallen and Fossil in Tauren's own bankruptcy case. Tauren's liquidating trust Tauren Exploration, Inc. Liquidating Trust ("Liquidating Trust") filed three adversary actions against Wallen (including one also against Fossil) ("Tauren Litigation").[8] And Gloria's Ranch, LLC's ("Gloria's Ranch") – a Tauren lessor – adversary proceeding ("Gloria's Ranch Litigation") against Wallen in Tauren's bankruptcy has been amended to designate Tauren's trustee – suing on the Liquidating Trust's behalf – as plaintiff.[9] (Collectively with the Tauren Litigation, "Texas Adversary Proceedings".) Arguing that circumstances have changed and their case is ripe, Wallen and Fossil (collectively "Plaintiffs") once again ask this Court to interpret its Cubic Order and Cubic Plan. This time, they point to the ongoing Texas litigation involving themselves and Tauren and the Liquidating Trust ("Defendants"). Plaintiffs contend that the injunction and Release in the Cubic Plan and the Cubic Order bar certain counts in the Texas Adversary Proceedings and ask the Court to hold the same.[10] The allegedly barred counts assert claims for constructive fraudulent

---

[7] *In re Cubic Energy, Inc.*, 587 B.R. 849, 855 (Bankr. D. Del. 2018); *See also In re Lazy Days' RV Ctr. Inc.*, 724 F.3d at 421–22 (citing *In re McDonald*, 205 F.3d 606, 609 (3d Cir. 2000)).

[8] D.I. 1, ¶¶ 25-28.

[9] *Id.*

[10] D.I. 1, ¶ 5.

5

transfers, avoidance of preference transfers, and veil-piercing for fraud.[11] These claims are made under both Bankruptcy and state law and appear to concern Wallen's activities from 2009 to 2016 and Fossil's activities from 2015 to 2016.[12]

Accordingly, Plaintiffs' complaint ("Complaint") demands declaratory and injunctive relief. Defendants respond that the Release requires the issuance of a final order determining that certain acts constitute willful misconduct, gross negligence, or fraud before the Complaint can be brought. And they note that no such order exists here. Moreover, they argue that a ruling would constitute an impermissible advisory opinion.

Defendants thus contend that the Complaint is not ripe and Delaware is not the appropriate place for this dispute. As such, they move to 1) dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6), 2) transfer the venue to Texas, 3) have the Court abstain from ruling on the issues pending before the Texas Bankruptcy Court.

## STATEMENT OF FACTS

Before their finances went awry and their relationship soured, Tauren and Cubic Energy were business partners.

In 2004, Gloria's Ranch granted a three-year oil and gas lease in Louisiana to Tauren, which assigned 49% of its interest to Cubic Energy.[13] Though the lease's primary

---

[11] D.I. 1, ¶¶ 25-28, 42.

[12] *Id.*

[13] D.I. 1, ¶ 15; *Gloria's Ranch, L.L.C. v. Tauren Expl., Inc.,* 51,077 (La. App. 2 Cir. 6/2/17), 223 So. 3d 1202,

term was three years, it was to continue so long as the land continued to produce oil and gas.[14] To assure the fairness of such arrangements, Louisiana law provides for the termination of oil and gas leases that fail to produce in "payable quantities" beyond their primary term.[15] This prohibition prevents the maintenance of such leases for speculative or selfish reasons. Whether a quantity is "payable" turns on whether a "reasonably prudent operator would continue production considering the particular circumstances in the light of the nature and customs of the industry involved."[16]

Fossil operated this lease and others in the area.[17] Four years after the land's lease, its Haynesville Shale formation became a very hot commodity.[18] Unable to afford to drill this well, Cubic Energy and Tauren set out to find buyers for their interests.[19] They soon struck a deal with Exco USA Asset, Inc ("Exco"). In 2009, Exco purchased Tauren's Haynesville Shale rights for $83 million - $52 million to Tauren and $31 million to Cubic

---

1207, reh'g denied (Aug. 7, 2017), writ granted, 2017-1519 (La. 12/15/17), 231 So. 3d 639, and writ granted, 2017-1522 (La. 12/15/17), 231 So. 3d 640, and writ granted, 2017-1518 (La. 12/15/17), 231 So. 3d 642, and aff'd in part, rev'd in part, 2017-1518 (La. 6/27/18), 252 So. 3d 431, reh'g granted in part, 2017-1518 (La. 9/7/18), 251 So. 3d 392.

[14] *Id.*

[15] *Gloria's Ranch,* 223 So. 3d at 1211.

[16] La. Stat. Ann. § 31:124.

[17] D.I. 1, ¶ 15. The facts in this paragraph represent the allegations in the Complaint. Per Fed. R. Civ. P. 12(b)(6)'s standards, they are accepted as true for the purposes of this opinion. Though Defendants do not dispute them, the facts in this paragraph do not represent the Court's factual findings.

[18] *Id; Gloria's Ranch,* 223 So. 3d at 1208.

[19] *Id.*

Energy.[20] Unfortunately for Tauren, after taxes, deductions, and transaction costs, it received very little of its proceeds.[21]

More trouble followed. In 2010, Gloria's Ranch alleged that the lease had expired due to a lack of production in paying quantities and demanded that Cubic Energy, Exco, and Tauren release the lease. The three parties refused and Gloria's Ranch sued to kick them out. The Louisiana court sided with Gloria's Ranch and ruled that Cubic Energy and Tauren were jointly and severally liable for $24 million.[22] Tauren has filed a Motion for Rehearing with the Louisiana Supreme Court and this motion was pending at the time of the Complaint. (In September 2018, the court granted a limited rehearing on the effects of the reversal of Wells Fargo's liability.)[23]

In the meantime, facing mounting problems, Cubic Energy and Tauren filed for bankruptcy within months of one another. Cubic Energy filed in this Court, which approved a confirmation plan with release provisions.

Sensing that their former ally was about to sue them, Wallen and Fossil filed the Enforcement Motion asking this Court to enjoin Tauren's trustee from doing so. They

---

[20] *Id.*

[21] *Id.* Cubic Energy did not sell its Haynesville Shale rights and Tauren retained development rights to another part of the leased land.

[22] D.I. 1, ¶ 16.

[23] *Gloria's Ranch, L.L.C. v. Tauren Expl., Inc.*, 2017-1518 (La. 9/7/18), 251 So. 3d 392, 393.

contended that Tauren released its rights to sue them in the Cubic Plan.[24] After the filing, the Texas Adversary Proceedings ensued. This Court denied the Enforcement Motion.

## ANALYSIS

### A. DISMISSAL

*1. Fed. R. Civ. P. 12*

Fed. R. Civ. P. 12 provides numerous pathways for courts and litigants to dismiss suits. This opinion concerns two of those routes: 12(b)(1) and 12(b)(6). A 12(b)(1) motion is used to dismiss for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. These rules are born of different concerns and their distinct procedures reflect their divergent considerations. 12(b)(1) motions are motivated by the need to assure that courts are competent to decide the matter before them. They function to ensure that courts stay within their constitutional and statutory lanes and do not rule on matters not entrusted to them. While 12(b)(6) motions are animated by a desire to spare courts the trouble and expense of presiding over cases where the plaintiff does not have a cognizable basis for relief.

*i. Fed. R. Civ. P. 12(b)(1)*

12(b)(1)'s standard for surviving dismissal is lower than 12(b)(6)'s.[25] Dismissal is proper only when the claim looks "'obviously immaterial and made solely for the

---

[24] Del. Bankr. 15-12500 D.I. 292.

[25] *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), holding modified by *Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).

purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous.'"[26] 12(b)(1) decisions generally do not reach a claim's merits.[27] Even if a claim relies on a legal theory that "is probably false," courts should not dismiss it on 12(b)(1) grounds unless it is insubstantial on its face.[28] Plaintiff must show that the court has jurisdiction.[29]

ii.      *Fed. R. Civ. P. 12(b)(6)*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[30] Entitlement to relief need not be probable at the complaint stage, but courts ask "for more than a sheer possibility that a defendant has acted unlawfully."[31] Rule 12(b)(6) provides greater procedural safeguards for plaintiffs than does Rule 12(b)(1).  Unlike 12(b)(1), defendant both bears the burden of persuasion and can not contest plaintiff's facts.[32]

---

[26] *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) quoting *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

[27] *Id.*

[28] *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir.1987); *Engineers v. Chicago, R.I. & P.R. Co.*, 382 U.S. 423, 428, 86 S.Ct. 594, 597, 15 L.Ed.2d 501 (1966); *see also Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

[29] *Gould*, 220 F.3d at 178.

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citations omitted).

[31] *Id.*

[32] *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

     iii.     *12(b)(6) is the appropriate vehicle where substantive and jurisdictional issues are intertwined.*

When jurisdictional and substantive issues are intertwined, the court should find that jurisdiction exists and employ the 12(b)(6) rubric.[33] Here, the line between jurisdictional competence and meritoriousness is indeed blurry. Take the controversy surrounding the necessity of a final order. The two concepts are so entangled that the question of jurisdiction cannot be answered without resolving factual disputes going to the action's merits.[34] The Court can not rule on the Motion's argument that the absence of a final order precludes jurisdiction unless it knows that a final order is required.[35][36]

     2.  *Ripeness*

The Third Circuit's tripartite ripeness test requires the consideration of: the adversity of interest between parties, the conclusiveness of the declaratory judgment, and the practical utility of the declaratory judgment.[37]

     3.  *The parties spar over the meaning of the Release.*

The Release waives all claims and liabilities "existing and hereafter arising…other than claims or liabilities arising out of or relating to any act or omission of a released

---

[33] *Kulick,* 816 F.2d at 898 n. 5 (internal quotation marks omitted); *See also Wells Fargo,* 824 F.3d at 348–50.

[34] *See e.g. Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.,* 711 F.2d 138, 139 (9th Cir. 1983).

[35] D.I. 13, ¶¶ 39-49.

[36] However, the Court can and does rule on Plaintiffs' related advisory opinion argument that the lack of adversity, conclusivity, and utility doom the Complaint.

[37] *Step-Saver Data Sys., Inc. v. Wyse Technology,* 912 F.2d 643, 647 (3d Cir. 1990).

party to the extent such act or omission is determined by a final order to have constituted willful misconduct, gross negligence, or fraud." This exception is broader than claims of fraud, and encompasses even claims relating to or arising from fraud. (Though the language does not say how close the relation must be.) The Court has not been briefed on whether any counts in the Texas Adversary Proceedings relate to or arise from acts constituting fraud, gross negligence, or willful misconduct, such that they may fall into the Release. (Though parties appear to differ on whether the Release exempts constructive fraud. Defendants say that constructive fraud is exempt.[38]) Nor have parties briefed the Court on how closely allegations must relate to these bad acts in order to be exempt from the Release.

As noted, parties are split on whether a final order is needed for allegations to be exempt from the Release.

Defendants argue that the Release's language requires a final order determining whether the claims relate to acts constituting willful misconduct, gross negligence, or fraud.[39] And that without one, the action is not ripe because Courts can not determine whether the exception applies.[40]  Thus, the Complaint should be dismissed for lack of jurisdiction and failure to state a claim.[41] Plaintiffs counter that this is a "heads I win; tails

---

[38] D.I. 13, ¶ 41.

[39] D.I. 13, ¶ 39.

[40] *Id.*

[41] *Id.*

you lose" argument.[42] They insist that asserting release as an affirmative defense in Texas would raise jurisdictional problems.[43] However, waiting for a final judgment may cause preclusion and waiver issues, as Fed. R. Civ. P. 8(c) requires them to assert releases at the pleading stage and deems them waived if they are not.[44]  In other words, even if they get the final order they seek, they will be procedurally barred from benefiting from it. Plaintiffs, however, do not take on Defendants' argument regarding contractual interpretation.

There is also the matter of which parties are bound by the Plan. Section 1.106 and 1.107 govern who are the Released Parties and who are the Releasing Parties.

Under § 1.106,

> ""Released Parties" means (a) the Debtors and Reorganized Debtors, (b)…equity holders…and other professional representatives of the Debtors and the Reorganized Debtors, in their capacities as such; … (f) with respect to each Entity name in the preceding (a) through (e), each such Entity's directors, officers, …equity holders,…controlling persons, … and other professionals or representatives when acting in any such capacities."

And under § 1.107,

> ""Releasing Parties" means (d) each Holder of a Claim that (i) affirmatively votes to accept the Plan or (ii) either (A) abstains from voting or (B) votes to reject

---

[42] D.I. 21, ¶ 10.

[43] *Id.*

[44] D.I. 21, ¶¶ 9-10.

> the Plan, and in case of either (A) or (B), does not opt
> out of the releases by Holders of Claims in compliance
> with the instructions set forth in the Solicitation
> Materials. Any Holder of Claims or interests solely in
> Classes that are deemed to reject the Plan shall not be
> a Releasing Party unless such Holder (x) has agreed
> otherwise in writing or (y) is a Released Party."

Defendants aver that Wallen and Fossil have not pled that they are Released Parties under the Plan. They scoff that Fossil's position that it is Cubic Energy's representative is merely "self-characterized."[45] And note that the Complaint does not allege factual findings to show that Wallen and Fossil were acting in their capacity as Released Parties, which the Plan requires.[46] Though Defendants do not appear to contest that Tauren is a Releasing Party, this Court will address this matter, as it is necessary to the dispute.

4. *It is plausible that Wallen and Fossil are Released Parties and Tauren is a Releasing Party under the Plan.*

This opinion now turns to whether the Wallen and Fossil are Released Parties and Tauren is a Releasing Party under the Plan.

Fossil and Wallen argue that they are Released Parties because Wallen was an equity-holder and CEO of Cubic Energy and Fossil a representative of reorganized Cubic

---

[45] D.I. 13, ¶ 84.

[46] D.I. 13, ¶¶ 50-54.

Energy.[47] To be released, however, Wallen and Fossil also had to have been acting in their capacities as Released Parties.[48]

Plaintiffs have plausibly alleged that Wallen is a Released Party. Tauren, as Cubic Energy's pre-petition equity holder, is a Released Party under § 1.106 of the Plan. § 1.106(f) releases Tauren's equity holders, as well as the equity holders of Cubic Energy's representatives when acting in their capacities as such. Wallen was Tauren's president and sole shareholder as of Cubic Energy's petition date.[49] Moreover, Wallen was also an equity holder of Fossil, Debtors' purported representative.[50] Thus, Wallen is covered by § 1.106 as both an equity holder of Debtors' equity holder and representative, so long as he acted in his capacities as such. Moreover, the Complaint plausibly pleads that he did so. It notes that Wallen was the company's prepetition CEO.[51] And the Texas Adversary Proceedings from which the Complaint seeks refuge identify Wallen by his ties to Tauren and Fossil without alleging that he acted outside the scope of his role as shareholder or equity holder.[52]

---

[47] *See* D.I. 1 and Del. Bankr. 15-12500 D.I. 292.

[48] Del. Bankr. 15-12500 D.I. 184-1, § 1.106.

[49] Del. Bankr. 15-12500 D.I. 292-2.

[50] *Id.*

[51] D.I. 1, ¶ 17.

[52] D.I. 1, ¶¶ 25-28.

This opinion now turns to Plaintiffs' claim that Fossil was a representative during its alleged wrongdoing.[53] Plaintiffs argued in the Enforcement Motion that Fossil represents reorganized Cubic Energy because – pursuant to the Plan – it is the new manager in Cubic Energy's new master services agreement.[54] Indeed, the Plan names Fossil as the new manager and includes a corresponding term sheet attesting that Fossil "shall continue to operate the Cubic Asset Debtors' properties following the Effective Date."[55] This suggests that Fossil was operating the properties both before and after the Plan's effective date.[56] The term sheet tasks Fossil with continuing its duties pertaining to finance and accounting services, government agency reporting, tax administration, and routine legal services.[57] Though the Plan does not define "representation," it frames representatives as akin to attorneys, bankers, advisors, and accountants.[58] Thus, such work likely constitutes representation. The evidence proffered is strong enough to plausibly allege that Wallen and Fossil are Released Parties.

Likewise, Tauren is plausibly a Releasing Party. Under the Plan, interest-holders deemed to reject the Plan are Releasing Parties if they are also Released Parties.[59] The

---

[53] Del. Bankr. 15-12500 D.I. 13, ¶ 9.

[54] Del. Bankr. 15-12500 D.I. 292, ¶ 28; *see also* Del. Bankr. 15-12500 D.I. 184-1, §§ 1.87-1.88; Del. Bankr. 15-12500 D.I. 14-2 and D.I. 191-2.

[55] Del. Bankr. 15-12500 D.I. 31-1, p. 23; Del. Bankr. 15-12500 D.I. 184-1, §§ 1.87-1.88.

[56] The start and end dates of Fossil acting as Debtors' representative are not clear.

[57] Del. Bankr. 15-12500 D.I. 31-1, p. 23.

[58] Del. Bankr. 15-12500 D.I. 184-1, § 1.106.

[59] *Id.*, § 1.107.

Louisiana court's $24 million joint liability judgment gave Tauren an unliquidated, general unsecured claim in the Cubic bankruptcy.   As such, the Plan deemed Tauren to have rejected the Plan.[60] Moreover, Tauren's equity interest Cubic Energy rendered it a Released Party Under the Plan.[61] Because Tauren rejected the Plan and was a Released Party, Tauren would be a Releasing Party.[62]

   *5.  It is plausible that the Release does not require a final order in this circumstance.*

Finally, this opinion turns to the scope of the Release. The Release appears to extinguish nearly all claims except those related to or arising from fraud, willful misconduct, and gross negligence. However, the Release also appears to require a final order, whose mechanism it does not explain.   Several questions about the final order remain.   For example, is a final order necessary only to benefit from the exception; can a party invoke the Release without a final order? (Requiring a final order to dismiss all claims, even those unrelated to fraud, threatens to eviscerate the Release.) Would a prohibition on pursuing fraud-related claims without final orders allow entities to seek final orders finding that their claims are tied to fraud? (If not, this could effectively block claims even Plaintiffs concede are permissible.[63])

---

[60] *Id.,* §§ 2.14, 2.24.

[61] *Id.,* § 1.106; D.I. 1, ¶ 2.

[62] Tauren has also not denied that it is a Releasing Party, even though that would have put a swifter end to this controversy.

[63] Del. Bankr. 15-12500 D.I. 326 (Tr. 13:10-12, Jul. 10, 2017) ("[M]ovants recognize that the Cubic Plan does not release claims for actual fraud, gross negligence, or willful misconduct"); Del. Bankr. 15-12500 D.I. 319, p.3 fn.5.

This Court does not have targeted briefing on the issue of the Release's interpretation, including the role of a final order. Nor does it have briefings concerning the nature of the claims in the Texas Adversary Proceedings that Plaintiffs seek to enjoin. Consequently, the Court does not know whether these claims arise from or relate to fraud, gross negligence, and willful misconduct and, thus, may fall into the Release's exception. In sum, because of the ambiguity surrounding the Release, it is plausible that it is does not require a final order in this circumstance. The Complaint withstands the 12(b)(6) challenge.

6. *The matter is ripe; its adjudication would not result in an impermissible advisory opinion.*

This section turns to the events affecting the ripeness of the Complaint and Plaintiffs' contention that the matter is not ripe. The filing of the Texas Adversary Proceedings and the addition of Defendants as plaintiffs in the Gloria's Ranch litigation have transformed this case's landscape. They not only provide clear adversity, but remove the "pivotal" basis for the Enforcement Motion's denial: the uncertainty of whether the potential claims would fall under the Release.[64] The Court is no longer asked to determine the release of mere "assertable" claims.[65] It is asked to determine whether the Release bars claims that have actually been asserted. Unlike the Enforcement Motion,

---

[64] *Cubic Energy,* 587 B.R. at 857.

[65] Del. Bankr. 15-12500 D.I. 292, ¶ 3.

granting relief the Complaint seeks would not result in an advisory opinion, but in a stop to litigation.

*Step-Saver* articulates three ripeness components: adversity, conclusivity, and utility. Defendants argue that the Complaint fails all three.[66] Defendants argue that: adversity does not exist because it is contingent upon a final order; conclusivity does not exist because the facts in the Texas Adversary Proceedings may not amount to fraud, willful misconduct, or gross negligence; and utility does not exist because the Complaint seeks to destroy the status quo by impeding factual discovery and does not allege the irreparable harm the declaratory judgment would prevent.[67] They are wrong.

Plaintiffs have satisfied *Step-Saver's* requirements.

First, interests do not get much more adverse than a lawsuit. And four lawsuits are currently pending in Texas. Even if Defendants' position on a final order is correct, the final order may affect those suits, but the parties do not lack adversity without it. Compare this with the time of the Enforcement Motion, when Plaintiffs could not point to any ongoing litigation.

Second, in their conclusivity argument, Defendants imply that it would be unfair and improper to rule on the Release's language before discovery is finished.[68] True, no one asserts that all discovery is complete in Texas. Yet that is not the standard. The

---

[66] D.I. 13, ¶¶ 44-48.

[67] *Id.*

[68] D.I. 22, ¶ 4.

19

Third Circuit does not require parties to toil through all of discovery to make an issue justiciable. It only requires the court to know the "underlying" facts such that it may grant relief "sufficiently conclusive to define and clarify the legal rights or relations of the parties."[69] And the underlying relevant facts are that the Court knows the identity of the claims (in the Texas Adversary Proceedings) that Plaintiffs want to enjoin, the Court has access to the complaints alleging the facts underlying those claims, and thus the Court should be able to determine whether Tauren released them.[70] Admittedly, the Court may require additional briefing regarding the Release, particularly its final order component, to make this determination.  But simply because this topic has not been briefed does mean that the underlying matter is not ripe.

This contrasts with the Enforcement Motion, which did not ask the Court "to strike a provision in the Cubic Plan, prevent ongoing litigation, or force the parties to do something."[71] Instead, it asked the Court to rule when litigation may have been imminent but its underlying claims were unknown. However, the devil is in the details. The type of claims brought determine the Cubic Plan's impact and would have required some future court to decide whether the claims were applicable.[72] In other words, the

---

[69] *Step–Saver*, 912 F.2d at 648, 649 n.9.

[70] D.I. 1, ¶ 42, referencing claims concerning constructive fraudulent transfer, avoidance of preference transfer, and veil-piercing for fraud. These claims are made under both Bankruptcy and state law. Plaintiffs do not seek to enjoin all of the counts in the Texas Adversary Proceedings.

[71] *Cubic Energy*, 587 B.R. at 856.

[72] *Cubic Energy*, 587 B.R. at 856-57.

Court was asked to decide on a "hypothetical set of facts" that would do nothing to bind a future court.[73]

Third, the utility argument does not hold water. Defendants can not credibly argue that utility is lacking because the Motion could blow up the status quo by forcing discovery to end.[74] For sure, preserving the status quo to prevent irreparable harm can be *a* purpose of a declaratory judgment. But it need not be the only purpose. And disturbing the status quo does not preclude a determination of utility, which is actually intended to change the status quo by providing "practical help in ending the controversy."[75] Stopping released claims from being litigated is a legitimate and useful purpose. It does not matter that discovery is ongoing. In a related vein, it's true that the Complaint does not allege irreparable harm, but it does not have to, because the Plan and Order already provide that released claims be enjoined.

As the Court explained, it could not rule on a motion when there was neither an ongoing litigation nor a means for the motion to end the parties' dispute.[76] Because the nature of the impending claims was central to the motion's disposition, the

---

[73] *Cubic Energy*, 587 B.R. at 857 (citing *Lazy–Day*, 724 F.3d at 421 (citing *Chafin*, 568 U.S. at 172, 133 S.Ct. 1017)); *see also In re Heyden*, 570 B.R. 489, 493 (Bankr. W.D. Pa. 2017) (citing *In re Olson*, 557 B.R. 851, 855 (Bankr. W.D. Pa. 2016)) and *Cubic Energy*, 587 B.R., at 855 (citing *In re Lazy Days RV Ctr. Inc.,* 724 F.3d at 422, (citing *In re Martin's Aquarium*, Inc., 98 Fed.Appx. 911, 912 (3d Cir. 2004))).

[74] D.I. 13, ¶¶ 46-49.

[75] *Step–Saver*, 912 F.2d at 650.

[76] *Cubic Energy*, 587 B.R. at 857.

Court could not provide a useful ruling without at least knowing what the claims are. The matter was not then ripe. It is now.

## B.  PERMISSIVE ABSTENTION

### 1.  *Permissive abstention doctrine in the Third Circuit.*

The Third Circuit has identified twelve factors when considering whether permissive abstention is appropriate. These factors include the: (1) effect or lack thereof on the efficient administration of the estate, (2) extent to which state law issues predominate over bankruptcy issues, (3) difficulty or unsettled nature of the applicable state law, (4) presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) jurisdictional basis, if any, other than 28 U.S.C. § 1334(c)(1), (6) degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) substance rather than form of an asserted "core" proceeding, (8) feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) burden of the court's docket, (10) likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) existence of a right to a jury trial, and (12) presence in, the proceeding of non-debtor parties.[77] The Court's analysis of the relevant

---

[77] *N.J. Dept. of Envtl. Protection v. Occidental Chem. Corp. (In re Maxus Energy Corp.)*, 560 B.R. 111, 124–25 (Bankr. D. Del. 2016) (citing *Off. Comm. of Unsecured Creditors v. Elkins (In re Integrated Health Servs., Inc.)*, 291 B.R. 615, 619 (Bankr. D. Del. 2003)), reconsideration denied, 571 B.R. 650 (Bankr. D. Del. 2017).

factors "'is not a mathematical formula.'"[78] And this list is not exhaustive. Both Plaintiffs and Defendants agree that these permissive abstention factors control.[79]

Appellate courts do not have jurisdiction over grants or denials of permissive abstention.[80] However, district courts may review them.[81]

2.    *Factors do not weigh in favor of permissive abstention.*

Overall, factors of administration and efficiency do not counsel for abstention. The question of docket burden is neutral, as the burden would eventually fall on *some* court and this Court can not ascertain the degree of burden the Texas court would suffer would this Court abstain. However, a few factors do support permissive abstention. The Cubic Plan has been confirmed. In the strictest sense, there is no longer an estate whose efficient administration may be endangered.[82] And neither party argues that the instant matter is not severable from the main case. Moreover, forum-shopping may exist where parties with ties to Texas repair to Delaware to litigate a matter affecting a Texas bankruptcy. Nonetheless, the predominant issue here involves the interpretation of a Plan that this Court approved. Even Machiavellian motivation would not make it undesirable or

---

[78] *LaRoche Indus., Inc. v. Orica Nitrogen LLC (In re LaRoche Indus., Inc.),* 312 B.R. 249, 254 (Bankr. D. Del. 2004) (quoting *Trans World Airlines, Inc. v. Karabu Corp.*, 196 B.R. 711, 715 (Bankr. D. Del. 1996)).

[79] D.I. 13, ¶ 57; D.I. 21, ¶ 28.

[80] *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 249 (3d Cir. 2007); *Allied Signal Recovery Tr. v. Allied Signal, Inc.*, 298 F.3d 263, 269 (3d Cir. 2002); and *In re Galtieri*, 172 F. App'x 397, 399 (3d Cir. 2006); *see also* 28 U.S.C. §1334(d).

[81] *In re Holiday RV Superstores, Inc.*, 362 B.R. 126 (D. Del. 2007); *In re Semcrude, L.P.*, No. BR 08-11525 BLS, 2010 WL 4537921 (D. Del. Oct. 26, 2010); *In re Winstar Commc'ns, Inc.*, No. AP 08-50296-KJC, 2013 WL 6053838 (D. Del. Nov. 15, 2013), aff'd, 591 F. App'x 58 (3d Cir. 2015).

[82] *In re Resorts Int'l, Inc.*, 372 F.3d 154, 165 (3d Cir. 2004). *See also* D.I. 13, ¶ 81; D.I. 21, ¶ 29.

unwise for parties to ask the court that approved a plan to be the one to interpret it. In sum, though permissive abstention is viable, it is not prudent.

Nor do considerations of outside laws and proceedings weigh in favor of abstention. There are no related proceedings in state or non-bankruptcy court.

Finally, though the predominant issue does not implicate the Bankruptcy Code, it does involve the interpretation of an order that this Bankruptcy Court approved. And though the debtor in the main case is not party to the Complaint, the legal issue squarely implicates the Cubic Plan, a core matter.

The Court should not abstain from determining the meaning of its own plan.

## C. VENUE TRANSFER

*1. Venue transfer doctrine in the Third Circuit.*

The Third Circuit has identified twelve factors that may help determine whether to transfer venue under 28 U.S.C. § 1412. They are (1) plaintiff's choice of forum, (2) defendant's forum preference, (3) whether the claim arose elsewhere, (4) the location of books and records and/or the possibility of viewing premises, if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment, (8) practical considerations that would make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the court's dockets, (10) the public policies of the fora, (11) the familiarity of the judge with

the applicable state law, and (12) the local interest in deciding local controversies at home.[83] The Third Circuit does not claim that this is an exhaustive list.

Plaintiffs sign on to these venue transfer factors, but Defendants rely on a California bankruptcy case with similar factors.[84] This opinion applies the Third Circuit standard.

### 2.    *Factors do not weigh in favor of venue transfer.*

The Complaint has strong ties to this jurisdiction. It revolves around the reach of a release approved by this Court. The Complaint's gravamen is that claims asserted in the Texas Adversary Proceedings have been released. Thus, wherever the claims in the Texas Adversary Proceedings may have arisen, the instant potential for their release arose under this Court's Cubic Plan. Yet most of the other factors are unclear or neutral.

For example, the public policy or judicial interests of each court as to the dispute. This Court has an interest in being the one to interpret its own plans and the Texas court likely has an interest in being the one to to decide their cases' issues. As to the location of records, the Court is unaware of information concerning the location of records that can not be digitized and potential inconvenience to parties or witnesses who may have to trek to Delaware instead of Texas, or vice versa. Nor is the Court aware of the comparative burdens on each venue's docket. Factors relating to enforceability and party preferences

---

[83] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995).

[84] D.I. 21, ¶ 44; D.I. 13, ¶ 79.

do not appear to favor either side. There is no reason to believe that the Texas Bankruptcy Court will not honor this Court's judgment. And party preferences are a wash.

This Court approved the Cubic Plan and entered the order confirming it. Therefore, this Court has the background and knowledge to most efficiently determine the issues presented in the Complaint. It should not transfer venue.

## CONCLUSION

For the foregoing reasons, the Court will deny the Motion.  An Order will be entered.